AMANNA v. CARVEL et al.   (No. 7058.)

(Supreme Court, Appellate Division, First Department.   April 9, 1915.)

1. MECHANICS' LIENS ⊙═══281—FORECLOSURE—EVIDENCE—SUFFICIENCY.

In a suit to foreclose a mechanic's lien, evidence *held* to sustain a finding that certain excavations were trenches within the schedule of payment fixed by the parties.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 565–572; Dec. Dig. ⊙═══281.]

2. MECHANICS' LIENS ⊙═══281—PROCEEDINGS—EVIDENCE—SUFFICIENCY.

In a suit to foreclose a mechanic's lien, evidence *held* to support a finding that plaintiff was entitled to compensation at 73 cents per cubic yard for certain excavations.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 565–572; Dec. Dig. ⊙═══281.]

3. CONTRACTS ⊙═══232—CONSTRUCTION—ADDITIONAL WORK.

Where a building contract required the principal contractor to sheet pile ·the outer sides of trenches, a subcontractor who was doing excavation work was not entitled to additional compensation for earth which caved in on the inside of the trenches; it being his duty to sheet pile such trenches, if necessary.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1071–1094; Dec. Dig. ⊙═══232.]

4. MECHANICS' LIENS ⊙═══281—PROCEEDINGS—EVIDENCE.

In a suit to foreclose a mechanic's lien, a finding that plaintiff constructed certain work *held* not against the weight of the evidence.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 565–572; Dec. Dig. ⊙═══281.]

5. DAMAGES ⊙═══175—BREACH OF CONTRACT—EVIDENCE.

Where a principal contractor agreed to furnish plaintiff, a subcontractor, with cement on the premises at the price he paid for it, evidence of the value of the cement could not be used to controvert the principal contractor's testimony as to the sum he paid.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 469–471; Dec. Dig. ⊙═══175.]

6. CONTRACTS ⊙═══232—CONSTRUCTION.

A provision in a contract with respect to extra work, requiring the contractor to plaster walls with Portland cement mortar at two cents per square foot, does not, where a subcontractor failed to plaster the walls as required, prevent the contractor from recovering the actual cost of doing the work; the walls left unfinished not being extra work.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1071–1094; Dec. Dig. ⊙═══232.]

7. DAMAGES ⊙═══121—BREACH OF CONTRACT.

A provision in a building contract that for certain extra work a fixed compensation should be allowed is not any criterion as to how much the principal contractor could deduct for a subcontractor's failure to perform regular work of the same character.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 306–308; Dec. Dig. ⊙═══121.]

Hotchkiss, J., dissenting.

Appeal from Special Term, New York County.

Action by Fiore Amanna against Richard Carvel and others. From a judgment for plaintiff, certain defendants appeal. Modified and affirmed.

⊙═══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, DOWLING, and HOTCHKISS, JJ.

Nathan F. Giffin, of New York City, for appellants.
J. Power Donellan, of New York City, for respondent.

LAUGHLIN, J.   This is an action to foreclose a mechanic's lien. On the 13th day of August, 1912, the appellant Carvel entered into a contract in writing with the city of New York, by its board of education, for the construction of the Bay Ridge High School building in the borough of Brooklyn, pursuant to plans and specifications thereto annexed and made a part thereof, for the gross sum of $416,500.   This contract, however, was awarded to Carvel on July 24, 1912, and on August 9, 1912, he entered into a subcontract in writing with the plaintiff, by which the latter agreed to do all the excavating work required by the plans and specifications, and Carvel agreed to pay him 73 cents per cubic yard for earth excavation, and 40 cents per cubic yard for excavating sand, which was to be left on the premises where designated by Carvel, and $1.50 per cubic yard "for excavating trenches and pier holes."   On the 14th day of September 1912, Carvel entered into another contract in writing with the plaintiff, by which the latter agreed "to furnish all the labor and material necessary to set in place and to do all the rubble stone work and all the concrete footings required according to the plans and specifications" for the school building, and was to receive therefor $5 per cubic yard for the rubble stone work, and $5.27 per cubic yard for concrete footings.   The plaintiff duly filed a lien under both contracts on the 27th day of January, 1913, and this action was brought to foreclose the same.   The defendant surety company executed a bond, upon which the lien was discharged.

[1]  The trial court found that the plaintiff excavated 2,924 cubic yards of earth for "trenches and pier holes and tunnels," for which he was entitled to receive $1.50 per cubic yard.   The evidence is uncontroverted that plaintiff excavated that number of cubic yards of earth over and above the quantity for which the court held he was entitled to recover at the rate of 73 cents per cubic yard.   The controversy with respect to this work is over the classification thereof.   It is claimed by appellants that for a large part of it plaintiff was entitled to receive only 73 cents per cubic yard, on the theory that it did not constitute the excavation of trenches or pier holes, within the contemplation of the contract on that subject.   Our attention has not been drawn to any provision of the specifications defining what was meant by those terms as used in the contract; nor is it claimed that these terms are in any manner defined, either in the contract or the specifications, or that their meaning was apparent on or discoverable by an inspection of the plans.   We find no part of the excavation work marked on the plans as "trenches" or "pier holes."   It was assumed by both parties that "pier holes" referred to the excavations for the foundations of columns.   So far as the record shows, the case was tried on the theory that the word "trenches" was used in the contract in the sense in which it is understood in the trade; and testimony was given on both sides with respect to that meaning.   That testimony is con-

flicting,.and presented a fair question of fact, upon which an appellate court would not be warranted in reversing the finding of the trial court and making a finding the other way; but a new trial might be awarded if the ends of justice require it.

A civil engineer and surveyor called by plaintiff testified on cross-examination that "trenches," as used by the trade in building construction, includes all excavation work below the level of the bottom of the cellar of the building. The plans required excavations to a considerable depth below the level of the bottom of the cellar of the building, for the foundation walls, "pipe tunnels," elevator and boiler pits, heat ducts, and service entrance. All of those excavations were known as "trenches" according to plaintiff's witness; but the testimony offered in behalf of appellants tends to show that none of them, excepting those for the walls of the building, were "trenches," and the reason indicated by the witnesses for appellants for thus confining the meaning of the word "trenches" is that a higher rate is allowed for trench work, owing to the fact that the material has to be handled several times, as the trenches ordinarily are too narrow to admit the vehicle in which the earth is to be carted away. With respect to a large part of the other excavations claimed by the plaintiff to be trench work, it was shown that they were so large that wagons could be and were driven into them in excavating. While this theory seems reasonable, still a question of fact was presented on conflicting evidence, which might have been obviated if the parties had made a more definite agreement.

Moreover, on reading the specifications, we find a provision relating to excavations by which the contractor was required to "do all requisite excavating of earth and rock for piers, walls, columns, sump and drip pits, pavements, cess-pools, catch-basins, trenches (including those for sewers, drains, gas and water supply pipes), etc., as required by these specifications and the plans, sections, and elevations." The parenthesis in this quotation clearly relates to trenches, and by it excavations for gas and water supply pipes are included in the term "trenches," which extends its meaning beyond the claim of the appellants, and probably includes the "pipe holes" which constitute the principal item of excavation now being considered, although neither party showed what kinds of pipe were to go in the "pipe holes." In the circumstances, we are not disposed to interfere with the finding of the trial court that the plaintiff was entitled to receive $1.50 per cubic yard for earth removed from all of these excavations below the level of the bottom of the cellar.

[2] The trial court also found that the plaintiff excavated 2,962 cubic yards of earth outside of the area walls and foundation walls and carted it away, pursuant to an agreement between him and Carvel, by which he was to receive 73 cents per cubic yard therefor, which was the reasonable value thereof. The specifications show that it was Carvel's duty, under his contract with the city, to sheet pile the exterior lines of the excavations for area walls and foundation walls, so that the ground outside of those lines would remain intact. There was conflicting testimony with respect to the number of cubic yards of earth the plaintiff was obliged to excavate outside those lines; but

the testimony in his behalf tended to show the quantity as found by the trial court, and on the appeal counsel for the appellants accepts that finding as to quantity. The excavation of that earth was rendered necessary, owing to the failure of Carvel to do the sheet piling required by his contract with the city, which it was conceded by his testimony and that of his superintendent was his duty as between him and the plaintiff. The court found that this was extra work, but that the price thereof was agreed upon at 73 cents per cubic yard. There is testimony to the effect that Carvel agreed to pay for this work as extra work, and that he agreed that the price· should be governed by the contract. Concededly 73 cents per cubic yard was the contract price for excavating all earth inside these exterior lines to the level of the bottom of the cellar. The only evidence bearing on the reasonable value of that work is the contract price of similar work within the lines of the cellar of the building.

Counsel for the appellants contends that the plaintiff was not entitled to receive, in any event, more than 40 cents per cubic yard for this work, the same as he was to receive for excavating sand left on the premises. That contention is made upon the theory that Carvel was required, by the specification annexed to his contract with the city, to "fill in all trenches and around all walls coming in contact with the earth with good clean earth rammed solid," and that therefore the earth thus removed, or similar earth, would be required in filling in around the exterior walls, and that it was not necessary to remove it from the premises. The answer to that argument, however, is that the evidence shows that there was no place to store the earth upon or adjacent to the premises, and that the plaintiff was therefore required to cart it away the same as he was required to cart away the other earth. I am of opinion that it is fairly to be inferred from the evidence that the reasonable value of this excavation work was the same as that of the excavation within the lines of the cellar, above the bottom thereof, and that plaintiff was entitled to receive pay therefor at the same rate, and that the parties so agreed. The finding of the trial court with respect to this item should therefore be affirmed.

[3] The trial court also found that the plaintiff was obliged to excavate 1,096 cubic yards of earth from the sides or slopes of the pier holes, trenches, and pipe tunnels, and was entitled to receive therefor $1.50 per cubic yard, aggregating $1,644, which was allowed to the plaintiff in arriving at the balance for which he has recovered. That work, manifestly, was not covered by the plaintiff's contract; but he has been allowed to recover therefor as if it were, and at the rate he was entitled to receive for trench and pier hole excavations, without other evidence than the provisions of the contract with respect to the reasonable value of the work. It is not specifically stated in the finding, but I think it is fairly to be inferred, that this excavation work relates to earth removed from the *inner* sides or slopes of the trenches for the outer foundation and area walls, and from the sides or slopes of the pier holes and pipe tunnels, for the other finding relates to the excavations of earth on the *outer* sides or slopes of the outer trenches. The excavation of the 1,096 cubic yards now under consideration was ,rendered necessary owing to the fact that the earth

was·not of sufficient solidity to enable· the plaintiff to excavate the inner lines of the outer trenches, and the lines of the pier holes and pipe tunnels, perpendicularly, without supporting the sides by sheet piling. We find no provision of Carvel's contract with the plaintiff, or of his contract with the city, or of the specifications, which requires him to sheet pile the *inner* sides of the trenches, or the sides or ends of the pier holes or pipe tunnels, and no provision of either contract or of the specifications is cited as imposing that duty upon him. We are of opinion, therefore, that the plaintiff assumed the risk of earth falling· into the foundation and area wall trenches from the *inner* sides, and into the pier holes and pipe tunnels, and, if he wished to avoid that, it was incumbent upon him to do whatever sheet piling was necessary to enable him to perform his contract. The plaintiff's recovery, therefore, under the first contract which is the basis of the first cause of action, was excessive by the amount allowed for this work, and the finding that it was performed pursuant to the provisions of the contract, and that the plaintiff is entitled to recover therefor at the rate of $1.50 per cubic yard, should be reversed, and a finding that it was not required by the contract, or performed pursuant to any agreement with Carvel, should be substituted therefor, and the conclusion of law with respect to the amount of the recovery should be modified, by deducting this amount, with interest from June 6, 1913, and the judgment should be modified accordingly.

[4] The trial court found that the plaintiff constructed 1,150 cubic yards of rubble stone work and 728 cubic yards of concrete footings. The appellants contend that these findings with respect to quantities of work are against the weight of the evidence. The evidence consists of the testimony of one Lyons and of a civil engineer and surveyor, called by plaintiff, whose figures the court accepted, and of Carvel's superintendent, which was to the effect that only 1,060 cubic yards of rubble stone work were constructed and 698 cubic yards of concrete footings. There is no basis for the contention that the finding is not supported by the preponderance of the evidence.

[5] The trial court, by the twenty-fourth finding, allowed Carvel a credit of $2,240 for 1,600 barrels of cement, which was at the rate of $1.40 per barrel. The evidence is uncontroverted that Carvel furnished and delivered 1,600 barrels of cement to plaintiff. The only controversy is with respect to the value thereof. Carvel testified, and his testimony on this point is uncontroverted, that before letting the second contract to the plaintiff he intended to do the work covered thereby himself, and that he had on the premises a quantity of cement, and that he agreed to sell it to the plaintiff for exactly what he "bought it for." He first testified generally that he paid $1.80 per barrel for the cement, and then he testified that sometimes he bought cement at $1.67, $1.70, and $1.85, and that "the majority of the cement I bought on the job cost me $1.85 a barrel." It appears that, while the cement was sold by the barrel, it was actually delivered in bags, and Carvel testified that he was allowed 6 cents for each bag returned to the vendor, and that about 50 per cent. of the bags were lost or destroyed, which would give a rebate of 12 cents per barrel for bags. On this testimony, he requested a finding that he was entitled to an

allowance of $1.80 per barrel for the cement, less 6 cents per bag for 3,200 bags, or 12 cents per barrel. This was refused, and he excepted, and on the appeal he predicates error on that exception.

Lyons and Carvel's former superintendent called by plaintiff testified that the reasonable value of the cement was $1.40 per barrel, and Carvel's former superintendent testified that a rebate of 10 cents per bag was allowed for bags returned. The court evidently accepted the testimony of these witnesses. I am of opinion that this was error. On the testimony of Carvel, which might have been, but was not, controverted by the plaintiff, the agreement was that he was to be paid for the cement what it cost him, and his testimony sustains his request to find. The finding of the trial court with respect to the allowance to Carvel for the cement should therefore be reversed, and a finding substituted therefor to the effect that the agreement was that Carvel was to be allowed the cost of the cement to him, which was $1.68 per barrel, and the conclusion of law with respect to the amount of the recovery should be further modified by deducting therefrom the sum of $448, together with interest thereon from June 6, 1913, and the judgment should be modified accordingly.

[6, 7] The trial court found that the plaintiff failed to plaster 8,000 square feet of rubble stone walls as required by his contract, and allowed Carvel 2 cents per square foot for that work. The specifications, among other things, required that the stone in the walls constituting the rubble stone work should be laid "on Rosendale cement mortar and to a line on both sides; and the outside surfaces of walls about areas, tunnels, etc., shall be plastered with Portland cement plaster, both sides, and the exposed faces floated true and smooth." This was part of the work it became the duty of the plaintiff to perform. It was conceded by plaintiff that he failed to plaster 8,000 square feet of exposed inner surface of foundation walls, which it was his duty, under his contract, to plaster in accordance with this provision of the specifications. Lyons testified that the amount allowed for such work by the board of education was 2 cents per square foot, which was reasonable value thereof. Carvel's superintendent testified that the number of square feet of wall which the plaintiff failed to plaster was 7,449, and that Carvel was obliged to do this work at the actual cost of about 7 cents per square foot. Carvel testified, and it is quite clear from the contract and specifications, that this work was embraced in his contract with the city and did not constitute additional work, and that the reasonable value of the work he was required to do to complete the performance of the plaintiff's contract in this respect was from 60 to 70 cents per square yard; and when asked what that would be per square foot he answered, evidently without computing it, 6 or 7 cents. The specifications contain provisions with respect to the compensation to be allowed Carvel for certain classes of additional work if required, one of which provides as follows:

"For plastering walls with Portland cement mortar, two cents (2¢) per square foot."

The attention of Carvel was drawn to this provision on cross-examination, and he testified that it did not relate to such work as the plain-

tiff failed to do, but to more plastering over the interstices or joints of stone walls, and not to finishing an entire surface of a wall such as was required by the contract and specifications. Counsel for the respondent appears to rely upon this provision of the specifications, in connection with the testimony of the witnesses called in behalf of the plaintiff, to support the finding made by the trial court. It is manifest, I think, that Carvel was right in testifying that this provision has no application to the matter in controversy. Moreover, if it did, it is merely a provision by which the city requires a contractor to agree to do additional work for a specified compensation. It is no evidence, as between the parties to this action, with respect to the reasonable value of the work, for this was not additional work, and did not come within that provsion of the specifications.

It appears by the evidence that the plaintiff failed to construct the wall plumb at many points, and it became necessary to fill it out by plastering on cement at places to a thickness of four inches, and it became necessary for Carvel to do this in order to comply with the requirements of the specifications that the exposed faces of the wall should be floated true and smooth. I am of opinion, therefore, that the court erred in refusing to find the eighteenth finding proposed by Carvel, which is to the effect that the plaintiff failed to perform his contract with respect to plastering 7,449 square feet of wall, and that Carvel was obliged to perform the work, and that the reasonable value thereof was 7 cents per square foot, or $521.43. The twenty-sixth finding, with respect to the number of square feet and the deduction therefor, should therefore be reversed, and a finding to the effect that the number of square feet was as claimed by Carvel, and that the reasonable value thereof was 7 cents per square foot, should be maintained therefor, and the conclusion of law with respect to the amount of the recovery should be further modified by deducting therefrom the sum of $361.43, together with interest from June 6, 1913, and the judgment should be modified accordingly.

The judgment should be modified as herein directed, by deducting therefrom the sum of $2,453.43, together with interest thereon from June 6, 1913, to December 9, 1914, which is $222.05, aggregating $2,-675.48, and, as so modified, affirmed, without costs and the findings and conclusions of law should be modified as herein directed. Settle order on notice.

INGRAHAM, P. J., and McLAUGHLIN and DOWLING, JJ., concur. HOTCHKISS, J., dissents.